IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PICERNE MILITARY HOUSING, LLC, BRAGG-PICERNE PARTNERS, LLC AND PICERNE CONSTRUCTION/FBG, LLC, | ) | CA 08 273 |
| Plaintiffs, | ) | C.A. No.: |
| v. | ) | |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | JURY DEMANDED |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs Picerne Military Housing, LLC, Bragg-Picerne Partners, LLC and Picerne Construction/FBG, LLC, by their attorneys, state the following as their Complaint against defendant American International Specialty Lines Insurance Company ("AIG").

**Introduction**

1. This is a case in which plaintiffs, insureds under a pollution legal liability insurance policy underwritten by defendant AIG (the "AIG Policy") seek a finding that AIG is required to provide insurance coverage for the investigation and clean up of illegally dumped waste material pursuant to a Notice of Violation issued by the North Carolina Department of Environmental Natural Resources.

**The Parties, Jurisdiction and Venue**

2. Plaintiff Picerne Military Housing, LLC is a Rhode Island limited liability company with its principal place of business in North Kingstown, Rhode Island. Picerne Military Housing, LLC is an insured under the AIG Policy.

3. Plaintiff Bragg-Picerne Partners, LLC is a Delaware limited liability company with its principal place of business in North Kingstown, Rhode Island. Bragg-Picerne Partners LLC is an insured under the AIG Policy.

4. Plaintiff Picerne Construction/FBG, LLC is a Delaware limited liability company with its principal place of business in North Kingstown, Rhode Island. Picerne Construction/FBG, LLC is an insured under the AIG Policy.

5. American International Specialty Lines Insurance Company is a New York corporation with its principal place of business in New York, New York.

6. American International Specialty Lines Insurance Company is a member company of American International Group, Inc., which is commonly known as AIG.

7. AIG is subject to the personal jurisdiction of this Court because it either: a) does business in Rhode Island; or b) agreed by contract to be subject to personal jurisdiction of this court pursuant to the "Service of Suit" condition of the AIG Policy.

8. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of $75,000.

9. Venue is proper in this court because: (1) AIG does business in Rhode Island and is otherwise subject to personal jurisdiction in Rhode Island; (2) the contract at issue was negotiated, in part, in Rhode Island; or (3) the defendant has offices in Rhode Island.

**The Fort Bragg Privatized Family Housing Project**

10. Bragg Communities, LLC is the owner of the Fort Bragg Privatized Family Housing Project (the "Project").

11. Pursuant to various agreements and a fifty (50) year ground lease with the U.S. Army, which owns and operates Fort Bragg, Bragg Communities, LLC will develop, build, own and maintain the privatized family housing on Fort Bragg.

12. Bragg Communities, LLC's members include Bragg-Picerne Partners, LLC and the US Department of the Army. Bragg-Picerne Partners, LLC is a wholly-owned subsidiary of Picerne Military Housing, LLC. Picerne Construction/FBG, LLC is a wholly owned subsidiary of Picerne Military Housing, LLC. Bragg-Picerne Partners, LLC, Picerne Military Housing, LLC, and Picerne Construction/FBG, LLC are hereinafter individually and collectively referred to as "Picerne".

13. Various Picerne affiliates are involved in the development, construction and property management of the Project. Picerne Construction/FBG, LLC, was engaged by Bragg Communities, LLC to manage the construction and renovation of the privatized family housing on the Project.

14. Picerne entered into subcontracts with PBG of North Carolina, Inc. ("PBG") to perform site work including but not limited to certain building demolition, land clearing, and land grading services on the Project.

15. PBG performed the demolition services from September 14, 2004 to December 21, 2007.

16. As part of PBG's responsibilities under the subcontracts, PBG was responsible for the disposal of waste material resultant from its demolition services.

17. The waste material consisted of large pieces of concrete, broken wood, rebar, metal and vegetation (including tree trunks, tree limbs, tree stumps, and mulch created from chipped trees).

18. Without Picerne's knowledge or permission, PBG dug large pits at Fort Bragg and, in violation of North Carolina law, dumped the waste material from its demotion and land clearing activities into the pits and then buried the waste material with dirt/soil.

19. On June 12, 2007, the North Carolina Department of Environmental and Natural Resources ("DENR") issued a Notice of Violation to Picerne alleging that Picerne operated a non-conforming solid waste disposal site/open dump on the property located at Holland Gateway and Virginia Place on Fort Bragg, North Carolina, in violation of North Carolina Solid Waste Management Rules 15A NC Administrative Code 13B (the "Notice of Violation"). A copy of the Notice of Violation to Picerne is attached as **Exhibit A**.

20. The June 12, 2007 Notice of Violation to Picerne states: "You are in violation of Section 13B.0105(a) in that waste was transported to a site that is not permitted to receive solid waste and was buried."

21. The June 12, 2007 Notice of Violation orders Picerne to "[r]emove and properly dispose of the waste that is on your property. Ensure that all waste is removed from the site and transported to a facility permitted to accept waste."

22. Picerne has performed an investigation to determine the extent of PBG's illegal dumping of waste material and has begun the required clean up.

23. As a result of Picerne's investigation and clean up, Picerne has learned that PBG's illegal dumping was systematic, in that PBG would dig large trenches and then dump waste material consisting of vegetation (including tree trunks, tree limbs, tree stumps, and mulch created from chipped trees) into the trench. Then PBG would dump waste material consisting of metal and broken pieces of wood on top of the vegetation. Then PBG would dump waste material consisting of broken concrete on top of the broken wood and metal waste. Then PBG would cover the waste material with earth and grade the then resultant top surface of the land.

24. Picerne has expended in excess of $250,000.00 complying with the Notice of Violation by investigating and cleaning up the waste material illegally dumped by PBG.

25. Picerne's investigation and clean up of the waste material in compliance with the Notice of Violation is ongoing.

**The AIG Policy**

26. AIG issued policy PLS 1157811 (the "AIG Policy") to Picerne.

27. The AIG Policy is a claims-made Pollution Legal Liability Select Policy, effective August 1, 2003 through August 1, 2013 with limits of liability of $30,000,000 per incident and $30,000,000 in the aggregate per coverage section and a self insured retention of $250,000 per incident and $500,000 in the aggregate.

28. Attached to this complaint as **Exhibit B** is copy of the AIG Policy.

29. Picerne provided notice of the Notice of Violation to AIG.

30. In response to Picerne's notice, AIG acknowledged a duty to defend Picerne for the Notice of Violation, but reserved the right to deny an obligation to indemnify Picerne for the investigation and clean up costs associated with complying with the Notice of Violation.

31. On April 25, 2008, AIG supplemented its reservation of rights by denying indemnification for the investigation and clean-up associated with complying with the Notice of Violation.

**COUNT I—Breach of Contract Against AIG**

32. As its paragraph 32, Picerne restates the allegations of paragraphs 1-31 as if fully set forth herein.

33. The AIG policy is a contract.

34. The costs of complying with the Notice of Violation fall within the terms of coverage provided by AIG to Picerne.

35. AIG's refusal and failure to indemnify Picerne with respect to the Notice of Violation constitutes a breach of the AIG Policy.

36. Picerne has fulfilled all of the conditions of the AIG Policy.

37. Picerne has been damaged by AIG's breach.

Wherefore, Picerne requests that judgment be entered in its favor and against AIG awarding Picerne its damages, interest, costs and such other relief as the Court deems just and proper.

**COUNT II—Declaratory Judgment Against AIG**

38. As its paragraph 38, Picerne restates the allegations of paragraphs 1-31 as if fully set forth herein.

39. There presently exists an actual controversy with respect to the extent to which AIG owes Picerne indemnification with respect to the investigation and clean up conducted in response to the Notice of Violation. Hence, this Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

40. The terms of the AIG Policy require AIG to defend Picerne with respect to the Notice of Violation and to indemnify Picerne with respect to all costs associated with responding to and complying with the Notice of Violation up to the limit of liability of the AIG Policy.

Wherefore, Picerne requests that a judgment be entered declaring that AIG is obligated to defend and indemnify Picerne with respect to the costs of Picerne's response, investigation and clean up as required by the Notice of Violation and that the Court award Picerne its costs and other relief the Court deems just and proper.

**COUNT III—Bad Faith Against AIG**
**Pursuant To Rhode Island General Laws §9-1-33**

41. As its paragraph 41, Picerne restates the allegations of paragraphs 1-31 as if fully set forth herein.

42. Picerne tendered a valid claim to AIG.

43. AIG has acknowledged the claim and its duty to defend the claim, but has refused to pay for the costs of complying with the Notice of Violation.

44. Picerne has expended over $5,000,000.00 to comply with the Notice of Violation, all of which should have been paid by AIG.

45. AIG has informed Picerne that in AIG's opinion, the Notice of Violation does not involve a "Pollution Condition" as that term is defined in the AIG Policy because the "waste" PBG dumped and which, pursuant to the Notice of Violation, Picerne has been ordered to clean up and remove, does not constitute "solid...waste material" as that phrase is used in the AIG Policy.

46. The facts giving rise to the Notice of Violation plainly qualify as a "Pollution Condition" as defined by the AIG Policy.

47. AIG's denial is both strained and fanciful.

48. AIG's denial of indemnification is not due to an honest disagreement or an innocent mistake.

49. AIG's conduct constitutes gross negligence and a wanton and reckless disregard of Picerne's rights.

50. Picerne has been damaged by AIG's bad faith failure to acknowledge coverage for the Notice of Violation claim.

Wherefore, Picerne requests that a judgment be entered in its favor and against AIG awarding damages, punitive damages, attorneys fees and such other relief the Court deems just and proper.

PICERNE MILITARY HOUSING, LLC,
BRAGG-PICERNE PARTNERS, LLC AND
PICERNE CONSTRUCTION/FBG, LLC

By its Attorneys,

Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Telephone: (401) 331-5700
Fax: (401) 331-5787

Charles L. Philbrick, Esquire
Trisha Rich, Esquire
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, Illinois 60603
Firm No. 37472
Telephone: (312) 263-3600
Fax: (312) 578-6666

Date: July 22, 2008

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on this case.

Plaintiffs,

By its Attorneys,

Bruce W. Gladstone (#2643)
bgladstone@cm-law.com
CAMERON & MITTLEMAN LLP
56 Exchange Terrace
Providence, Rhode Island 02903
Telephone: (401) 331-5700
Fax: (401) 331-5787

G:\pec\Picerne v. AIG\Complaint.doc