# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

175 Water Street, Twelfth Floor
New York, New York 10038

## POLLUTION LEGAL LIABILITY SELECT® POLICY

**THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ CAREFULLY.**

## DECLARATIONS

**POLICY NUMBER:** PLS 1157811

**Item 1. NAMED INSURED:** BRAGG COMMUNITIES, LLC

**ADDRESS:** 75 LAMBERT LIND HIGHWAY
WARWICK, RI 02886

**Item 2. POLICY PERIOD:** **FROM** August 1, 2003 **TO** August 1, 2013
12:01 AM Standard Time at the Address of the Named Insured shown above

**Item 3. COVERAGES AND COVERAGE SECTION LIMITS AND DEDUCTIBLES:**

This Policy includes only those Coverages as stated in Section I of the Policy for which deductibles and limits of liability appear below. If no deductible or limits of liability appears for a Coverage, that Coverage does not apply.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $250,000 | $30,000,000 | $30,000,000 |
| B | $250,000 | $30,000,000 | $30,000,000 |
| C | $250,000 | $30,000,000 | $30,000,000 |
| D | $250,000 | $30,000,000 | $30,000,000 |
| E | $250,000 | $30,000,000 | $30,000,000 |
| F | $250,000 | $30,000,000 | $30,000,000 |
| G | $250,000 | $10,000,000 | $10,000,000 |
| H | $250,000 | $10,000,000 | $10,000,000 |
| I | [redacted] | | |



OTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

Copyright, American International Group, Inc., 2000

INSURED'S COPY

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | [redacted] | |

**Item 4. POLICY AGGREGATE LIMIT:** $30,000,000

**Item 5. INSURED PROPERTY(S):** See Attached Schedule(s) of Insured Properties

**Item 6. POLICY PREMIUM:** $400,000.00

Premium for Certified Acts of Terrorism Coverage Under Terrorism Risk Insurance Act 2002:
Not Applicable, Coverage Rejected By Insured

**Item 7. RETROACTIVE DATE:** Under Coverages A,B,C,D,E,F,G & H, the **Pollution Conditions** must commence on or after the date shown below.

Retroactive Date: None
(Enter date or "none" if no Retroactive Date Applies.)

**Item 8. CONTINUITY DATE:** August 1, 2003

**BROKER:** MARSH USA, INC.
200 CLARENDON STREET
BOSTON, MA 02116

By ______________________________
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)



Copyright, American International Group, Inc., 2000

INSURED'S COPY

# FORMS SCHEDULE

**Named Insured:** BRAGG COMMUNITIES, LLC

**Policy Number:** PLS 1157811
**Effective 12:01 AM:** August 1, 2003

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AISLIC PLS Dec | 75321 | (07/00) |
| | AISLIC PLS Policy Coverage | 76391 | (07/00) |
| | Notice of Loss/Notice of Claim | CI1141 | (09/00) |
| 1 | War Exclusion Endorsement | 79098 | (12/01) |
| 2 | 100% Minimum Earned Premium Endt | 78795 | (09/01) |
| 3 | Notice of Poss Claim Deletion | 76101 | (07/00) |
| 4 | Coverages G and H - New Conditions Only Endt | 78782 | (09/01) |
| 5 | Material Change in Use of Insured Prop Excl | 72322 | (07/00) |
| 6 | Definition of Clean-Up to Excl 3rd Parties | 76099 | (07/00) |
| 7 | Cov I-1st Party Carrier Excl | 76470 | (07/00) |
| 8 | SIR Layer (Maintenance) | 72323 | (07/00) |
| 9 | Mortgage/Insured/Assignment Endorse | 76460 | (07/00) |
| 10 | Named Insured Endt | 78791 | (09/01) |
| 11 | Terrorism Excl - All (Incl Cert Acts Of Terrorism) | 81268 | (12/02) |
| 12 | Named Insured(s) Endorse - Creditors | 73479 | (07/00) |
| 13 | Microbial Matter Coverage Endorsement | MNSCPT | (07/03) |
| 14 | Amended Asbestos and Lead Exclusion | MNSCPT | (07/03) |
| 15 | Automatic Extended Reporting Period | MNSCPT | (07/03) |
| 16 | Known Contaminant Exclusion | MNSCPT | (08/03) |
| 17 | Identified UST Exclusion Endorsement | MNSCPT | (07/03) |
| 18 | Pesticide Exclusion Endorsement | MNSCPT | (07/03) |
| 19 | Other Insurance Endorsement | MNSCPT | (07/03) |

## SCHEDULE OF INSURED PROPERTIES, COVERAGES, AND COVERAGE SECTION LIMITS AND DEDUCTIBLES ENDORSEMENT

is hereby agreed that the following location(s) is (are) included in Item 5 of the Declarations as **INSURED PROPERTY(S)**, subject to all of the terms and conditions of the Policy, and that the corresponding Coverages, deductibles, and limits of liability shown for each such **INSURED PROPERTY** are included in Item 3 of the Declarations:

**Item 5: INSURED PROPERTY(S):**

1. Nijmegan Neighborhood, Fort Bragg, NC, 28307
2. Cherbourg Neighborhood, Fort Bragg, NC, 28307
3. Saint Mere Eglise Neighborhood, Fort Bragg, NC, 28307
4. Hammond Hills Neighborhood, Fort Bragg, NC, 28307
5. Biazza Ridge Neighborhood, Fort Bragg, NC, 28307
6. Normandy Neighborhood, Fort Bragg, NC, 28307
7. Lower Normandy Neighborhood, Fort Bragg, NC, 28307

With respect to the above-listed **Insured Property(s)**, Item 3 of the Declarations shall provide as follows:

**Item 3:** Coverages and Coverage Section Limits and Deductibles

This Policy includes only those Coverages as stated in Section I. of the Policy for which deductibles and limits of liability appear below.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $250,000 | $30,000,000 | $30,000,000 |
| B | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| E | $250,000 | $30,000,000 | $30,000,000 |
| F | $250,000 | $30,000,000 | $30,000,000 |
| G | $250,000 | $10,000,000 | $10,000,000 |
| H | $250,000 | $10,000,000 | $10,000,000 |
| I | [redacted] | | |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | [redacted] | |

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

72336 (7/00)
CI1429



INSURED'S COPY

## SCHEDULE OF INSURED PROPERTIES, COVERAGES, AND COVERAGE SECTION LIMITS AND DEDUCTIBLES ENDORSEMENT

ıs hereby agreed that the following location(s) is (are) included in Item 5 of the Declarations as **INSURED PROPERTY(S)**, subject to all of the terms and conditions of the Policy, and that the corresponding Coverages, deductibles, and limits of liability shown for each such **INSURED PROPERTY** are included in Item 3 of the Declarations:

**Item 5: INSURED PROPERTY(S):**

8. Bastogne Gables Neighborhood, Fort Bragg, NC, 28307
9. Ardennes Neighborhood, Fort Bragg, NC, 28307
10. Bataan Neighborhood, Fort Bragg, NC, 28307
11. Corregidor Courts Neighborhood, Fort Bragg, NC, 28307
12. Bougainville Neighborhood, Fort Bragg, NC, 28307
13. Casablanca Neighborhood, Fort Bragg, NC, 28307
14. Anzio Acres Neighborhood, Fort Bragg, NC, 28307

With respect to the above-listed **Insured Property(s)**, Item 3 of the Declarations shall provide as follows:

**Item 3:** Coverages and Coverage Section Limits and Deductibles

This Policy includes only those Coverages as stated in Section I. of the Policy for which deductibles and limits of liability appear below.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $250,000 | $30,000,000 | $30,000,000 |
| B | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| E | $250,000 | $30,000,000 | $30,000,000 |
| F | $250,000 | $30,000,000 | $30,000,000 |
| G | $250,000 | $10,000,000 | $10,000,000 |
| H | $250,000 | $10,000,000 | $10,000,000 |
| I | [redacted] | | |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | [redacted] | |

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

72336 (7/00)
CI1429

## SCHEDULE OF INSURED PROPERTIES, COVERAGES, AND COVERAGE SECTION LIMITS AND DEDUCTIBLES ENDORSEMENT

is hereby agreed that the following location(s) is (are) included in Item 5 of the Declarations as **INSURED PROPERTY(S)**, subject to all of the terms and conditions of the Policy, and that the corresponding Coverages, deductibles, and limits of liability shown for each such **INSURED PROPERTY** are included in Item 3 of the Declarations:

**Item 5: INSURED PROPERTY(S):**

15. Historic Warehouse, Adjacent to Bastongne Gables N, Fort Bragg, NC, 28307
16. Northern Training Areas 1 thro, Fort Bragg, NC, 28307

With respect to the above-listed **Insured Property(s)**, Item 3 of the Declarations shall provide as follows:

**Item 3:** Coverages and Coverage Section Limits and Deductibles

This Policy includes only those Coverages as stated in Section I. of the Policy for which deductibles and limits of liability appear below.

| Coverage | Deductible-Each Incident | Each Incident Limit | Coverage Section Aggregate Limit |
|---|---|---|---|
| A | $250,000 | $30,000,000 | $30,000,000 |
| B | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| | $250,000 | $30,000,000 | $30,000,000 |
| E | $250,000 | $30,000,000 | $30,000,000 |
| F | $250,000 | $30,000,000 | $30,000,000 |
| G | $250,000 | $10,000,000 | $10,000,000 |
| H | $250,000 | $10,000,000 | $10,000,000 |
| I | [redacted] | | |

| Coverage | Business Interruption (Days) Limit | Business Interruption ($) Limit |
|---|---|---|
| J | [redacted] | |

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY
# POLLUTION LEGAL LIABILITY SELECT ® POLICY
# TABLE OF CONTENTS

SECTION I. INSURING AGREEMENTS . . . . . . . . . . 1

1. COVERAGES

COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS . . . . . . . . . . 1

COVERAGE B - ON-SITE CLEAN-UP OF NEW CONDITIONS . . . . . . . . . . 1

COVERAGE C - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY AND PROPERTY DAMAGE . . . . . . . . . . 2

COVERAGE D - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM PRE-EXISTING CONDITIONS . . . . . . . . . . 2

COVERAGE E - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM NEW CONDITIONS . . . . . . . . . . 2

COVERAGE F - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY AND PROPERTY DAMAGE . . . . . . . . . . 2

COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS . . . . . . . . . . 2

COVERAGE H - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS . . . . . . . . . . 2

COVERAGE I - POLLUTION CONDITIONS RESULTING FROM TRANSPORTED CARGO . . . . . . . . . . 2

COVERAGE J - BUSINESS INTERRUPTION COVERAGE - ACTUAL LOSS OR LOSS OF RENTAL VALUE . . . . . . . . . . 3

2. LEGAL EXPENSE AND DEFENSE . . . . . . . . . . 3

3. INDEPENDENT COUNSEL . . . . . . . . . . 3

SECTION II. EXCLUSIONS . . . . . . . . . . 4

1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES . . . . . . . . . . 4

2. COVERAGE I EXCLUSIONS . . . . . . . . . . 5

SECTION III. NOTICE REQUIREMENTS AND CLAIM PROVISIONS . . . . . . . . . . 5

A. NOTICE OF POLLUTION CONDITIONS, CLAIMS AND AN INTERRUPTION . . . . . . . . . . 5

B. NOTICE OF POSSIBLE CLAIM . . . . . . . . . . 6

SECTION IV. RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED IN THE EVENT OF POLLUTION CONDITIONS . . . . . . . . . . 6


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

SECTION V. LIMITS OF COVERAGE; DEDUCTIBLE . . . . . . . . . . 7

A. Policy Aggregate Limit . . . . . . . . . . 7
B. Each Incident Limit -Coverages A through I . . . . . . . . . . 7
C. Coverage Section Aggregate Limit . . . . . . . . . . 7
D. Maximum for All Business Interruption . . . . . . . . . . 7
E. Multiple Coverages . . . . . . . . . . 7
F. Deductible . . . . . . . . . . 8

SECTION VI. CONDITIONS . . . . . . . . . . 8

SECTION VII. EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES A THROUGH I . . . . . 11

SECTION VIII. DEFINITIONS . . . . . . . . . . 12



Copyright, American International Group, Inc. ®2000



INSURED'S COPY

# AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

## POLLUTION LEGAL LIABILITY SELECT ®POLICY

**MANY OF THE COVERAGES CONTAIN CLAIMS-MADE-AND-REPORTED REQUIREMENTS. PLEASE READ CAREFULLY. ADDITIONALLY, THIS POLICY HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT AND MAY BE DIFFERENT FROM OTHER POLICIES THE INSURED MAY HAVE PURCHASED. DEFINED TERMS, OTHER THAN HEADINGS, APPEAR IN BOLD FACE TYPE.**

**NOTICE: THE DESCRIPTIONS IN ANY HEADINGS OR SUB-HEADINGS OF THIS POLICY ARE INSERTED SOLELY FOR CONVENIENCE AND DO NOT CONSTITUTE ANY PART OF THE TERMS OR CONDITIONS HEREOF.**

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and the Application annexed hereto and made a part hereof, and pursuant to all of the terms of this Policy, the Company agrees with the **Named Insured** as follows:

## I. INSURING AGREEMENTS

### 1. COVERAGES:

THE FOLLOWING COVERAGES ARE IN EFFECT ONLY IF SCHEDULED IN THE DECLARATIONS.

### COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS

1. To pay on behalf of the **Insured, Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced prior to the **Continuity Date**, if such **Pollution Conditions** are discovered by the **Insured** during the **Policy Period,** provided:

   (a) The discovery of such **Pollution Conditions** is reported to the Company in writing as soon as possible after discovery by the **Insured** and in any event during the **Policy Period** in accordance with Section III. of the Policy.

   Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of **Pollution Conditions.**

   (b) Where required, such **Pollution Conditions** have been reported to the appropriate governmental agency in substantial compliance with applicable **Environmental Laws** in effect as of the date of discovery.

2. To pay on behalf of the **Insured, Loss** that the **Insured** is legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced prior to the **Continuity Date,** provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period,** or during the **Extended Reporting Period** if applicable.

### COVERAGE B - ON-SITE CLEAN-UP OF NEW CONDITIONS

1. To pay on behalf of the **Insured, Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced on or after the **Continuity Date**, if such **Pollution Conditions** are discovered by the **Insured** during the **Policy Period**, provided:

   (a) The discovery of such **Pollution Conditions** is reported to the Company in writing as soon as possible after discovery by the **Insured** and in any event during the **Policy Period** in accordance with Section III. of the Policy.

   Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of **Pollution Conditions** .

   (b) Where required, such **Pollution Conditions** have been reported to the appropriate governmental agency in substantial compliance with applicable **Environmental Laws** in effect as of the date of discovery.

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION


Copyright, American International Group, Inc. ®2000

2. To pay on behalf of the **Insured**, **Loss** that the **Insured** is legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced on or after the **Continuity Date**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE C - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY AND PROPERTY DAMAGE**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions** on or under the **Insured Property**, if such **Bodily Injury** or **Property Damage** takes place while the person injured or property damaged is on the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE D - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM PRE-EXISTING CONDITIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that commenced prior to the **Continuity Date**, and migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE E - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM NEW CONDITIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that commenced on or after the **Continuity Date**, and migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE F - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY AND PROPERTY DAMAGE**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions**, beyond the boundaries of the **Insured Property**, that migrated from the **Insured Property**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE G - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** of parties other than the owners, operators or contractors of the **Non-Owned Location**, or their employees, or **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Non-Owned Location**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE H - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs** resulting from **Pollution Conditions**, beyond the boundaries of the **Non-Owned Location**, that migrated from the **Non-Owned Location**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

**COVERAGE I - POLLUTION CONDITIONS RESULTING FROM TRANSPORTED CARGO**

To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs** resulting from **Pollution Conditions** caused by **Transported Cargo**, provided such **Claims** are first made against the **Insured** and reported to the Company in


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable. This coverage shall not be utilized to evidence financial responsibility of any **Insured** under any federal, state, provincial or local law.

**COVERAGE J - BUSINESS INTERRUPTION COVERAGE - ACTUAL LOSS OR RENTAL VALUE (ONLY AVAILABLE IF COVERAGE A, COVERAGE B OR BOTH COVERAGES A AND B ARE PURCHASED)**

To pay the **Insured's Actual Loss** or loss of **Rental Value**, and **Extra Expense** to the extent it reduces **Actual Loss** or loss of **Rental Value** otherwise payable under this coverage section, resulting from an **Interruption** caused directly by **Pollution Conditions** on or under the **Insured Property**. If the **Interruption** is caused by such **Pollution Conditions** and any other cause, the Company shall pay only for that portion of **Actual Loss** or loss of **Rental Value**, and **Extra Expense** resulting from an **Interruption** caused solely and directly by such **Pollution Conditions**.

1. Such **Pollution Conditions** must:

   (a) (i) commence prior to the **Continuity Date**, if the **Named Insured** has purchased Coverage A, under this Policy; or

   (ii) commence on or after the **Continuity Date**, if the **Named Insured** has purchased Coverage B, under this Policy; and

   (b) be first discovered by the **Insured** during the **Policy Period**. Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of **Pollution Conditions.**

2. An **Interruption** must be reported to the Company, no later than thirty (30) days after its commencement. The **Insured** shall, as soon as practicable, resume normal operation of the business and dispense with **Extra Expense**.

3. In determining **Actual Loss** or loss of **Rental Value**, the Report/Worksheet annexed to this Policy and made a part of it shall be utilized. If the **Insured** could reduce the **Actual Loss** or loss of **Rental Value**, or **Extra Expense** resulting from an **Interruption**:

   (a) by complete or partial resumption of operations; or

   (b) by making use of other property at the **Insured Property**, or elsewhere,

   such reductions shall be taken into account in arriving at **Actual Loss** or loss of **Rental Value** or **Extra Expense.**

2. **LEGAL EXPENSE AND DEFENSE**

   The Company shall have the right and the duty to defend any **Claims** covered under Coverages A through I provided the **Named Insured** has purchased such Coverage. The Company's duty to defend or continue defending any such **Claim**, and to pay any **Loss**, shall cease once the applicable limit of liability, as described in Section V. LIMITS OF COVERAGE; DEDUCTIBLE has been exhausted. Defense costs, charges and expenses are included in **Loss** and reduce the applicable limit of liability, as described in Section V., and are included within the Deductible amount for the Coverage Section that applies and is shown in Item 3 of the Declarations.

   The Company will present any settlement offers to the **Insured**, and if the **Insured** refuses to consent to any settlement within the limits of liability of this Policy recommended by the Company and acceptable to the claimant, the Company's duty to defend the **Insured** shall then cease and the **Insured** shall thereafter negotiate or defend such **Claim** independently of the Company and the Company's liability shall not exceed the amount, less the Deductible or any outstanding Deductible balance, for which the **Claim** could have been settled if such recommendation was consented to.

3. **INDEPENDENT COUNSEL**

   In the event the **Insured** is entitled by law to select independent counsel to defend the **Insured** at the Company's expense, the attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company would actually pay to counsel that the Company retains in the


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

ordinary course of business in the defense of similar **Claims** in the community where the **Claim** arose or is being defended.

Additionally, the Company may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency, including experience in defending **Claims** similar to the one pending against the **Insured**, and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the **Insured** agrees that counsel will timely respond to the Company's request for information regarding the **Claim**. The **Insured** may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

## II. EXCLUSIONS

### 1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES

This Policy does not apply to **Clean-Up Costs**, **Claims**, **Loss**, **Actual Loss**, **Extra Expense**, or loss of **Rental Value**:

**A. CRIMINAL FINES, PENALTIES, AND ASSESSMENTS:**

Due to any criminal fines, penalties or assessments.

**B. CONTRACTUAL LIABILITY:**

Arising from liability of others assumed by the **Insured** under any contract or agreement, unless the liability of the **Insured** would have attached in the absence of such contract or agreement or the contract or agreement is an **Insured Contract**.

**C. TRANSPORTATION:**

Except with respect to Coverage I, arising out of **Pollution Conditions** that result from the maintenance, use, operation, loading or unloading of any conveyance beyond the boundaries of the **Insured Property**.

**D. INTENTIONAL NONCOMPLIANCE:**

Arising from **Pollution Conditions** based upon or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

**E. INTERNAL EXPENSES:**

For costs, charges or expenses incurred by the **Insured** for goods supplied or services performed by the staff or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, except if in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, or unless such costs, charges or expenses are incurred with the prior written approval of the Company in its sole discretion.

**F. INSURED vs. INSURED:**

By any **Insured** against any other person or entity who is also an **Insured** under this Policy. This exclusion does not apply to **Claims** initiated by third parties or **Claims** that arise out of an indemnification given by one **Named Insured** to another **Named Insured** in an **Insured Contract** .

**G. ASBESTOS AND LEAD:**

Solely with respect to Coverages A, B, D, E, G, H and J, arising from asbestos or any asbestos-containing materials or lead-based paint installed or applied in, on or to any building or other structure. This exclusion does not apply to **Clean-Up Costs** for the remediation of soil and groundwater.


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

H. **EMPLOYER LIABILITY:**

Arising from **Bodily Injury** to an **Insured** or its parent, subsidiary or affiliate arising out of and in the course of employment by the **Insured** or its parent, subsidiary or affiliate. This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay third parties who must pay damages because of the injury.

I. **PRIOR KNOWLEDGE/NON-DISCLOSURE:**

Arising from **Pollution Conditions** existing prior to the **Inception Date** and known by a **Responsible Insured** and not disclosed in the application for this Policy, or any previous policy for which this Policy is a renewal thereof.

J. **IDENTIFIED UNDERGROUND STORAGE TANK:**

Arising from **Pollution Conditions** resulting from an **Underground Storage Tank** whose existence is known by a **Responsible Insured** as of the **Inception Date** and which is located on the **Insured Property** unless such **Underground Storage Tank** is scheduled on the Policy by endorsement.

2. **COVERAGE I EXCLUSIONS**

The following exclusions apply to Coverage I.

This Policy does not apply to **Loss**:

A. **PROPERTY DAMAGE TO CONVEYANCES:**

For **Property Damage** to any conveyance utilized during the **Transportation** of **Transported Cargo**. This exclusion does not apply to **Claims** made by third-party carriers of the **Insured** for such **Property Damage** arising from the **Insured's** negligence.

B. **POLLUTION CONDITIONS PRIOR OR SUBSEQUENT TO TRANSPORTATION OF CARGO:**

Arising from **Pollution Conditions**:

1. That commence prior to the **Transportation** of **Transported Cargo**; or
2. That commence after **Transported Cargo** reaches its final destination, or while **Transported Cargo** is in storage off-loaded from the conveyance that was transporting it.

C. **THIRD-PARTY CARRIER CLAIMS:**

Made by a third-party carrier, its agents or employees, for **Bodily Injury**, **Property Damage** or **Clean-Up Costs**, whether or not the **Bodily Injury**, **Property Damage** or **Clean-Up Costs** were directly incurred by such third-party carrier. This exclusion does not apply to **Claims** arising from the **Insured's** negligence.

III. **NOTICE REQUIREMENTS AND CLAIM PROVISIONS**

The **Insured** shall provide the Company with notice of **Pollution Conditions, Claims** or an **Interruption** as follows:

A. **NOTICE OF POLLUTION CONDITIONS, CLAIMS AND AN INTERRUPTION**

1. In the event of **Pollution Conditions** or **Claims** under Coverages A through I, or an **Interruption** under Coverage J, the **Insured** shall give written notice to:

Manager, Pollution Insurance Products Unit
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, Sixth Floor
New York, New York 10005
Fax: (212) 344-2761

or other address(es) as substituted by the Company in writing.


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

2. The **Insured** shall give written notice of **Pollution Conditions** as soon as possible. Notice under all coverages shall include, at a minimum, information sufficient to identify the **Named Insured**, the **Insured Property**, the names of persons with knowledge of the **Pollution Conditions** and all known and reasonably obtainable information regarding the time, place, cause, nature of and other circumstances of the **Pollution Conditions**.

3. The **Insured** shall give notice of **Claims** as soon as possible, but in any event during the **Policy Period** or during the **Extended Reporting Period**, if applicable. The **Insured** shall furnish information at the request of the Company. When a **Claim** has been made, the **Insured** shall forward the following to the Company as soon as possible:

   (a) All reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the claimant(s) and available witnesses.

   (b) All demands, summonses, notices or other process or papers filed with a court of law, administrative agency or an investigative body.

   (c) Other information in the possession of the **Insured** or its hired experts which the Company reasonably deems necessary.

**B. NOTICE OF POSSIBLE CLAIM**

1. If during the **Policy Period**, the **Insured** first becomes aware of a **Possible Claim**, the **Insured** may provide written notice to the Company during the **Policy Period** containing all the information required under Paragraph 2. below. Any **Possible Claim** which subsequently becomes a **Claim** made against the **Insured** and reported to the Company within five (5) years after the end of the **Policy Period** of this Policy or any continuous, uninterrupted renewal thereof, shall be deemed to have been first made and reported during the **Policy Period** of this Policy. Such **Claim** shall be subject to the terms, conditions and limits of coverage of the policy under which the **Possible Claim** was reported.

2. It is a condition precedent to the coverage afforded by this Section III. B that written notice under Paragraph 1. above contain all of the following information: (a) the cause of the **Pollution Conditions**; (b) the **Insured Property** or other location where the **Pollution Conditions** took place; (c) the **Bodily Injury**, **Property Damage** or **Clean-Up Costs** which has resulted or may result from such **Pollution Conditions**; (d) the **Insured(s)** which may be subject to the **Claim** and any potential claimant(s); (e) all engineering information available on the **Pollution Conditions** and any other information that the Company deems reasonably necessary; and (f) the circumstances by which and the date the **Insured** first became aware of the **Possible Claim**.

**IV. RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED IN THE EVENT OF POLLUTION CONDITIONS**

**A. The Company's Rights**

The Company shall have the right but not the duty to clean up or mitigate **Pollution Conditions** upon receiving notice as provided in Section III. of this Policy. Any sums expended in taking such action by the Company will be deemed incurred or expended by the **Insured** and shall be applied against the limits of coverage and deductible under this Policy.

**B. Duties of the Insured**

The **Named Insured** shall have the duty to clean up **Pollution Conditions** to the extent required by **Environmental Law**, by retaining competent professional(s) or contractor(s) mutually acceptable to the Company and the **Named Insured**. The Company shall have the right but not the duty to review and approve all aspects of any such clean-up. The **Named Insured** shall notify the Company of actions and measures taken pursuant to this paragraph.


Copyright, American International Group, Inc. ®2000

## V. LIMITS OF COVERAGE; DEDUCTIBLE

Regardless of the number of **Claims**, claimants, **Pollution Conditions** or **Insureds** under this Policy, the following limits of liability apply:

### A. Policy Aggregate Limit

The Company's total liability for all **Loss**, under Coverages A through I, and all **Actual Loss**, loss of **Rental Value** and **Extra Expense** under Coverage J, shall not exceed the "Policy Aggregate" stated in Item 4 of the Declarations. The Company's internal expenses do not erode the limit of liability available for any **Loss**.

### B. Each Incident Limit - Coverages A Through I

1. Subject to Paragraph V.A. above, the most the Company will pay for all **Loss** under each Coverage in Coverages A through I arising from the same, related or continuous **Pollution Conditions** is the "Each Incident" limit of coverage for that particular coverage stated in Item 3 of the Declarations.

2. If the **Insured** first discovers **Pollution Conditions** during the **Policy Period** and reports them to the Company in accordance with Section III., all continuous or related **Pollution Conditions** reported to the Company under a subsequent Pollution Legal Liability Policy issued by the Company or its affiliate providing substantially the same coverage as this Policy shall be deemed to have been first discovered and reported during the **Policy Period**.

3. If a **Claim** for **Bodily Injury**, **Property Damage**, or **Clean-Up Costs** is first made against the **Insured** and reported to the Company during the **Policy Period**, all **Claims** for **Bodily Injury**, **Property Damage** or **Clean-Up Costs**, arising from the same, continuous or related **Pollution Conditions** that are first made against the **Insured** and reported under a subsequent Pollution Legal Liability Policy issued by the Company or its affiliate providing substantially the same coverage as this Policy, shall be deemed to have been first made and reported during the **Policy Period**. Coverage under this Policy for such **Claims** shall not apply, however, unless at the time such **Claims** are first made and reported, the **Insured** has maintained with the Company or its affiliate Pollution Legal Liability coverage substantially the same as this coverage on a continuous, uninterrupted basis since the first such **Claim** was made against the **Insured** and reported to the Company.

### C. Coverage Section Aggregate Limit

Subject to Paragraph V. A. above, the Company's total liability for all **Loss** under each Coverage in Coverages A through I, shall not exceed the "Coverage Section Aggregate" limit of coverage for that particular coverage stated in Item 3 of the Declarations.

### D. Maximum for All Business Interruption

Subject to Paragraph V. A. above, the maximum amount for which the Company is liable for all **Actual Loss** or loss of **Rental Value**, and **Extra Expense** under Coverage J is 80% of the lesser of:

1. The **Actual Loss** and **Extra Expense**, or loss of **Rental Value** and **Extra Expense**, whichever is applicable, incurred during the number of days of interruption of business stated in Item 3 of the Declarations; and

2. The amount stated in Item 3 of the Declarations.

It is a condition of Coverage J that the remaining 20% of such amount be borne by the **Insured** at its own risk and remain uninsured.

### E. Multiple Coverages

Subject to Paragraph V. A. above, if the same, related or continuous **Pollution Conditions** result in coverage under more than one Coverage under Coverages A through J, every applicable "Each Incident," "Coverage Section Aggregate," and "Maximum for All Business Interruption" limit of coverage


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

among such coverage sections shall apply to the **Clean-Up Costs**, **Loss**, **Actual Loss** and **Extra Expense**, or loss of **Rental Value** and **Extra Expense**, whichever is applicable, resulting from such **Pollution Conditions**.

F. **Deductible**

1. Coverages A through I

Subject to Paragraphs V. A. through V.E. above, this Policy is to pay covered **Loss** in excess of the Deductible amount stated in Item 3 of the Declarations for the applicable coverage, up to but not exceeding the applicable "Each Incident" limit of coverage.

If the same, related or continuous **Pollution Conditions** result in coverage under more than one coverage section in Coverages A through I, only the highest Deductible amount stated in Item 3 of the Declarations among all the coverage sections applicable to the **Loss** will apply.

The **Insured** shall promptly reimburse the Company for advancing any element of **Loss** falling within the Deductible.

2. Coverage J

Subject to Paragraphs V.A. through V.E. above, this Policy is to pay the **Actual Loss** or loss of **Rental Value**, and **Extra Expense** under Coverage J in excess of the **Actual Loss** or loss of **Rental Value**, and **Extra Expense** sustained during the first seven (7) days of an **Interruption** during the **Period of Restoration**. The seven (7) day period applies to all **Actual Loss**, or loss of **Rental Value**, and **Extra Expense** arising from the same, related or continuous **Pollution Conditions.**

VI. **CONDITIONS**

A. **Assignment** - This Policy may be assigned with the prior written consent of the Company, which consent shall not be unreasonably withheld or delayed. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon.

B. **Subrogation** - In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of the **Insured's** rights against any person or organization who caused **Pollution Conditions** on account of which the Company made any payment under this Policy. The **Insured** shall do nothing to prejudice the Company's rights under this paragraph subsequent to **Loss**. Any recovery as a result of subrogation proceedings arising out of the payment of **Loss** covered under this Policy shall accrue first to the **Insured** to the extent of any payments in excess of the limit of coverage; then to the Company to the extent of its payment under the Policy; and then to the **Insured** to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

C. **Cooperation** - The **Insured** shall cooperate with the Company and offer all reasonable assistance in the investigation and defense of **Claims** under the applicable Coverages purchased. The Company may require that the **Insured** submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, the Company may require written statements or the **Insured's** attendance at meetings with the Company. The **Insured** must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses.

D. **Changes** - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.


Copyright, American International Group, Inc. ®2000

E. **Voluntary Payments** - No **Insured** shall voluntarily enter into any settlement, or make any payment or assume any obligation unless in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, without the Company's consent which shall not be unreasonably withheld, except at the **Insured's** own cost.

F. **Concealment or Fraud** - This entire Policy shall be void if, whether before or after **Clean-Up Costs** are incurred or a **Claim** is first made, the **Named Insured** has willfully concealed or misrepresented any fact or circumstance material to the granting of coverage under this Policy, the description of the **Insured Property**, or the interest of the **Insured** therein.

G. **Cancellation** - This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company only for the reasons stated below by mailing to the **Named Insured** at the address shown in the Policy, written notice stating when not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

1. Material misrepresentation by the **Insured;**
2. The **Insured's** failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium or Deductible when due;
3. A change in operations at an **Insured Property** during the **Policy Period** that materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing. If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro-rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

H. **Other Insurance** - Where other insurance may be available for **Loss, Actual Loss** or loss of **Rental Value,** and **Extra Expense** covered under this Policy, the **Insured** shall promptly upon request of the Company provide the Company with copies of all such policies. If other valid and collectible insurance is available to the **Insured** for **Loss Actual Loss** or loss of **Rental Value,** and **Extra Expense** covered by this Policy, the Company's obligations are limited as follows:

1. This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the Company will share with all such other insurance by the method described in Paragraph 2. below.
2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

I. **Right of Access and Inspection** - To the extent the **Insured** has such rights, any of the Company's authorized representatives shall have the right and opportunity but not the obligation to interview persons employed by the **Insured** and to inspect at any reasonable time, during the **Policy Period** or thereafter, the **Insured Property**. Neither the Company nor its representatives shall assume any responsibility or duty to the **Insured** or to any other party, person or entity, by reason of such right or inspection. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. The **Named Insured** agrees to provide appropriate personnel to assist the Company's representatives during any inspection.


Copyright, American International Group, Inc. ®2000

J. **Access to Information** - The **Named Insured** agrees to provide the Company with access to any information developed or discovered by the **Insured** concerning **Loss** covered under this Policy, whether or not deemed by the **Insured** to be relevant to such **Loss** and to provide the Company access to interview any **Insured** and review any documents of the **Insured**.

K. **Representations** - By acceptance of this Policy, the **Named Insured** agrees that the statements in the Declarations, the Application and the Report/Worksheet are their agreements and representations. that this Policy is issued in reliance upon the truth of such representations and that this Policy embodies all agreements existing between the **Insured** and the Company or any of its agents relating to this insurance.

L. **Action Against Company** - No third-party action shall lie against the Company, unless as a condition precedent thereto there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

M. **Arbitration** - It is hereby understood and agreed that all disputes or differences that may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of **Loss**, may be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Any party may commence such arbitration proceeding and the arbitration shall be conducted in the **Insured's** state of domicile. The arbitrators shall give due consideration to the general principles of the law of the **Insured's** state of domicile in the construction and interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions and exclusions of this Policy are to be construed in an evenhanded fashion as between the parties. Where the language of this Policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties).

The written decision of the arbitrators shall set forth its reasoning, shall be provided simultaneously to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs. Judgment on the award may be entered in any court of competent jurisdiction. Each party shall bear equally the expenses of the arbitration.

N. **Service Of Suit** - Subject to Paragraph M. above, it is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street, New York, New York 10270, or his or her representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

O. **Acknowledgment of Shared Limits** - By acceptance of this Policy, the **Named Insureds** understand, agree and acknowledge that the Policy contains a Policy Aggregate Limit that is applicable to, and will be shared by, all **Named Insureds** and all other **Insureds** who are or may become insured hereunder. In view of the operation and nature of this shared Policy Aggregate Limit, the **Named Insureds** and all other **Insureds** understand and agree that prior to filing a **Claim** under the Policy, the Policy Aggregate Limit may be exhausted or reduced by prior payments for other **Claims** under the Policy.

P. **Separation of Insureds** - It is hereby agreed that except with respect to the Limit of Liability, Section II. F. (Insured vs. Insured exclusion), and any rights and duties specifically assigned to the first **Named Insured,** this insurance applies: 1. As if each **Named Insured** were the only **Named Insured**; and 2. Separately to each **Named Insured** against who a **Claim** is made. Misrepresentation, concealment, breach of a term or or condition, or violation of any duty under this Policy by one **Named Insured** shall not prejudice the interest of coverage for another **Named Insured** under this Policy. Provided, however, that this Condition shall not apply to any **Named Insured** who is a parent, subsidiary or affiliate of the first **Named Insured.**

## VII. EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES A THROUGH I

The **Named Insured** shall be entitled to an Automatic **Extended Reporting Period**, and (with certain exceptions as described in Paragraph B. of this Section) be entitled to purchase an Optional **Extended Reporting Period** for Coverages A through I collectively, upon termination of coverage as defined in Paragraph B.3. of this Section. Neither the Automatic nor the Optional **Extended Reporting Period** shall reinstate or increase any of the limits of liability of this Policy.

### A. Automatic Extended Reporting Period

Provided that the **Named Insured** has not purchased any other insurance to replace this insurance and which applies to a **Claim** otherwise covered hereunder, the **Named Insured** shall have the right to the following: a period of sixty (60) days following the effective date of such termination of coverage in which to provide written notice to the Company of **Claims** first made and reported within the Automatic **Extended Reporting Period**.

A **Claim** first made and reported within the Automatic **Extended Reporting Period** will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** arises from **Pollution Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy. No part of the Automatic **Extended Reporting Period** shall apply if the **Optional Extended Reporting Period** is purchased.

### B. Optional Extended Reporting Period

The **Named Insured** shall be entitled to purchase an Optional **Extended Reporting Period** upon termination of coverage as defined herein (except in the event of nonpayment of premium), as follows:

1. A **Claim** first made and reported within the Optional **Extended Reporting Period**, if purchased in accordance with the provisions contained in Paragraph 2. below, will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** arises from **Pollution Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy.
2. The Company shall issue an endorsement providing an Optional **Extended Reporting Period** of up to forty (40) months from termination of coverage hereunder for all **Insured Properties** and **Non-Owned Locations**, if applicable, or any specific **Insured Property** or **Non-Owned Location**, provided that the **Named Insured**:


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

(a) makes a written request for such endorsement which the Company receives within thirty (30) days after termination of coverage as defined herein; and

(b) pays the additional premium when due. If that additional premium is paid when due, the **Extended Reporting Period** may not be cancelled, provided that all other terms and conditions of the Policy are met.

3. Termination of coverage occurs at the time of cancellation or nonrenewal of this Policy by the **Named Insured** or by the Company, or at the time of the Company's deletion of a location which previously was an **Insured Property** or **Non-Owned Location**.

4. The Optional **Extended Reporting Period** is available to the **Named Insured** for not more than 200% of the full Policy premium stated in the Declarations.

## VIII. DEFINITIONS

A. **Actual Loss** means the:

1. Net income (net profit or loss before income taxes) the **Insured** would have earned or incurred had there been no **Interruption**; and

2. Continuing normal operating expenses incurred, including **Ordinary Payroll Expense**.

B. **Bodily Injury** means physical injury, or sickness, disease, mental anguish or emotional distress, sustained by any person, including death resulting therefrom.

C. **Claim** means a written demand received by the **Insured** seeking a remedy or alleging liability or responsibility on the part of the **Insured** for **Loss** under Coverages A through I. For purposes of this Policy, a **Claim** does not include a **Possible Claim** that was reported under a prior policy but which has become a **Claim** during the **Policy Period** of this Policy as described in Section III. B.

D. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, for the investigation, removal, remediation including associated monitoring, or disposal of soil, surfacewater, groundwater or other contamination:

1. To the extent required by **Environmental Laws**; or

2. That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties.

**Clean-Up Costs** also include **Restoration Costs**.

E. **Continuity Date** means the date stated in Item 8 of the Declarations.

F. **Environmental Laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.

G. **Extended Reporting Period** means either the automatic additional period of time or the optional additional period of time, whichever is applicable, in which to report **Claims** following termination of coverage, as described in Section VII. of this Policy.

H. **Extra Expense** means necessary expenses the **Insured** incurs during the **Period of Restoration**:

1. That would not have been incurred if there had not been an **Interruption**; and

2. That avoid or minimize an **Interruption**,

but only to the extent such expenses reduce **Actual Loss** or loss of **Rental Value**, whichever is applicable, otherwise covered under this Policy.


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

**Extra Expense** will be reduced by any salvage value of property obtained for temporary use during the **Period of Restoration** that remains after the resumption of normal operations.

I. **Inception Date** means the first date set forth in Item 2 of the Declarations.

J. **Insured** means the **Named Insured**, and any past or present director, officer, partner or employee thereof, including a temporary or leased employee, while acting within the scope of his or her duties as such.

K. **Insured Contract** means a contract or agreement submitted to and approved by the Company, and listed on an Endorsement to this Policy.

L. **Insured Property** means each of the locations identified in Item 5 of the Declarations.

M. **Interruption** means the necessary suspension of the **Insured's** business operations at an **Insured Property** during the **Period of Restoration**.

N. **Loss** means, under the applicable Coverages:

1. Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damages; and civil fines, penalties, or assessments for **Bodily Injury** or **Property Damage**;
2. Costs, charges and expenses incurred in the defense, investigation or adjustment of **Claims** for such compensatory damages or punitive, exemplary or multiple damages, and civil fines, penalties or assessments, or for **Clean-Up Costs**; or
3. **Clean-Up Costs**.

O. **Named Insured** means the person or entity named in Item 1 of the Declarations acting on behalf of all other **Insureds**, if any, for the payment or return of any premium, payment of any deductible, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the **Extended Reporting Period** clause.

P. **Natural Resource Damage** means physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. 1801 et seq.)), any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

Q. **Non-Owned Location** means a site that is not owned or operated by the **Named Insured**, and that is identified in a Non-Owned Covered Locations Schedule attached to and made a part of this Policy by endorsement.

R. **Ordinary Payroll Expense** means the entire payroll expense for all employees of the **Insured**, except officers, executives, department managers and employees under contract.

S. **Period of Restoration** means the length of time as would be required with the exercise of due diligence and dispatch to restore the **Insured Property** to a condition that allows the resumption of normal business operations, commencing with the date operations are interrupted by **Pollution Conditions** and not limited by the date of expiration of the **Policy Period**. The **Period of Restoration** does not include any time caused by the interference by employees or other persons with restoring the property, or with the resumption or continuation of operations.

T. **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

1. Cancellation of this Policy; or


Copyright, American International Group, Inc. ®2000


INSURED'S COPY

2. With respect to particular **Insured Property(s)** or **Non-Owned Location(s)** designated in the Declarations, the deletion of such location(s) from this Policy by the Company at the **Named Insured's** written request, but solely with respect to that **Insured Property** or **Non-Owned Location**.

**U. Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.

**V. Possible Claim** means **Pollution Conditions** that commenced on or after the **Inception Date** that the **Insured** reasonably expects may result in a **Claim**.

**W. Property Damage** means:

1. Except with respect to Coverage C, physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use and diminution in value thereof;
2. Loss of use, but not diminution in value, of tangible property of parties other than the **Insured** that has not been physically injured or destroyed;
3. Solely with respect to Coverage C, physical injury to or destruction of tangible property of parties other than the **Insured**, including the resulting loss of use thereof; and
4. **Natural Resource Damage**.

**Property Damage** does not include **Clean-Up Costs**.

**X. Rental Value** means the:

1. Total anticipated rental income from tenant occupancy of the **Insured Property** as furnished and equipped by the **Insured**;
2. Amount of all charges that are the legal obligation of the tenant(s) pursuant to a lease and that would otherwise be the **Insured's** obligations; and
3. Fair rental value of any portion of the **Insured Property** that is occupied by the **Insured** during the **Period of Restoration**, less any rental income the **Insured** could earn:
   (a) by complete or partial rental of the **Insured Property**, or
   (b) by making use of other property on the **Insured Property** or elsewhere.

**Y. Responsible Insured** means the manager or supervisor of the **Named Insured** responsible for environmental affairs, control or compliance, or any manager of the **Insured Property**, or any officer, director or partner of the **Named Insured**.

**Z. Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the Company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Clean-Up Costs**. However, such **Restoration Costs** shall not exceed the net present value of such property prior to incurring **Clean-Up Costs**. **Restoration Costs** do not include costs associated with improvements or betterments.

**AA. Transportation** means the movement of **Transported Cargo** by a conveyance, from the place where it is accepted by a carrier until it is moved:

1. To the place where the carrier finally delivers it; or
2. In the case of waste, to a waste disposal facility to which the carrier delivers it.


Copyright, American International Group, Inc. ©2000


INSURED'S COPY

**Transportation** includes the carrier's loading or unloading of **Transported Cargo** onto or from a conveyance provided that the loading or unloading is performed by or on behalf of the **Named Insured.**

**BB. Transported Cargo** means goods, products, or waste transported for delivery by a carrier properly licensed to transport such goods, products, or waste.

**CC. Underground Storage Tank** means any tank that has at least ten (10) percent of its volume below ground in existence at the **Inception Date**, or installed thereafter, including associated underground piping connected to the tank.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its president and secretary and signed on the Declarations page by a duly authorized representative or countersigned in states where applicable.

Elizabeth M. Tuck
SECRETARY

PRESIDENT



Copyright, American International Group, Inc. ®2000



INSURED'S COPY

**AIG ENVIRONMENTAL**

**NOTICE OF LOSS/NOTICE OF CLAIM**

INSTRUCTIONS: PLEASE ATTACH ALL CORRESPONDENCE RELATING TO THIS NOTICE OF LOSS AND MAIL COPIES OF THIS NOTICE TO THE ADDRESS BELOW:

Manager, Pollution Insurance Products Unit
AIG Technical Services, Inc.
Environmental Claims Department
80 Pine Street, 6th Floor
New York, NY 10005

Date of Notice: ____________________

**NAMED INSURED:** BRAGG COMMUNITIES, LLC

**ADDRESS OF INSURED:** 75 LAMBERT LIND HIGHWAY
WARWICK, RI 02886

**TELEPHONE:** ( ) ______________
**CONTACT:** ____________________

**BROKER NAME:** MARSH USA, INC.

**BROKER ADDRESS:** 200 CLARENDON STREET
BOSTON, MA 02116

**TELEPHONE:** ( ) ______________
**CONTACT:** ____________________

**POLICY INFORMATION:**
Policy Number: PLS 1157811
Policy Period: From: August 1, 2003 To: August 1, 2013

**Loss Information:**
Loss Location: ____________________

Date & Description of Loss: ____________________

For AIG Use Only:
Date Claim Notice Received: ____________________
Date of Claim: ____________________
Company/Person Filing Suit (if applicable): ____________________

**NOTE:** *Any person who knowingly files a Statement of Claim containing any false or misleading information is subject to criminal and civil penalties.*

CI1141 (09/00)

**ENDORSEMENT NO.** 1

**'is endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAR EXCLUSION ENDORSEMENT**

It is hereby agreed that the following exclusion is added to Section **II. EXCLUSIONS,** Subsection **1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES:**

**WAR**

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

79098 (12/01)
CI1625



INSURED'S COPY

**ENDORSEMENT NO.** 2

**"is endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**100% MINIMUM EARNED PREMIUM ENDORSEMENT**

1. It is hereby agreed that the following minimum earned premium applies:

   **Inception Date** Minimum Premium Earned 100 %

2. It is hereby agreed that Section **VI. CONDITIONS**, Paragraph **G.**, **Cancellation** is deleted in its entirety and replaced with the following:

   **G. Cancellation** - This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company only for the reasons stated below by mailing to the **Named Insured** at the address shown in the Policy, written notice stating when not less than 60 days (10 days for nonpayment of premium) thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

   1. Material misrepresentation by the **Insured**;

   2. The **Insured's** failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium or Deductible when due;

   3. A change in operations at an **Insured Property** during the **Policy Period** that materially increases a risk covered under this Policy.

   The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing. If the **Named Insured** cancels, no return premium will be calculated and the premium shall be 100% earned at the **Inception Date**. If the Company cancels, earned premium shall be computed on a pro rata basis. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

All other terms, conditions and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

**ENDORSEMENT NO.** 3

**This endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NOTICE OF POSSIBLE CLAIM DELETION ENDORSEMENT**

It is hereby agreed that Section **III. NOTICE REQUIREMENTS AND CLAIM PROVISIONS**, Paragraph **B. NOTICE OF POSSIBLE CLAIM** is deleted in its entirety.

All other terms, conditions, and exclusions shall remain the same.

Paul Fafeul

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

**ENDORSEMENT NO.** 4

**Is endorsement, effective 12:01 AM,** August 1. 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGES G AND H - NEW CONDITIONS ONLY ENDORSEMENT**

It is hereby agreed that Section **I. INSURING AGREEMENTS, 1. COVERAGES, COVERAGE G - THIRD - PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS** and **COVERAGE H - THIRD - PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS** are deleted in their entirety and replaced with the following:

**COVERAGE G - THIRD - PARTY CLAIMS FOR ON-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured, Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** of parties other than the owners, operators or contractors of the **Non-Owned Location**, or their employees, or **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Non-Owned Location** that commenced on or after the **Continuity Date** shown below, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

For purposes of coverage provided by this Endorsement, the following **Continuity Date** applies to Coverage G:

**Continuity Date:** 08/01/2003

**COVERAGE H - THIRD - PARTY CLAIMS FOR OFF-SITE BODILY INJURY, PROPERTY DAMAGE OR CLEAN-UP COSTS - NON-OWNED LOCATIONS**

To pay on behalf of the **Insured, Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury, Property Damage** or **Clean-Up Costs** resulting from **Pollution Conditions** beyond the boundaries of the **Non-Owned Location** that commenced on or after the **Continuity Date** shown below, that migrated from the **Non-Owned Location,** provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period**, or during the **Extended Reporting Period** if applicable.

For purposes of coverage provided by this Endorsement, the following **Continuity Date** applies to Coverage H:

**Continuity Date:** 08/01/2003

All other terms, conditions, and exclusions shall remain the same.

Paul Fafard

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

78782 (9/01)
CI1600



INSURED'S COPY

**ENDORSEMENT NO. 5**

**is endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MATERIAL CHANGE IN USE OF INSURED PROPERTY(S) EXCLUSION**

It is hereby agreed that the following exclusion is added to Section **II. EXCLUSIONS, 1., COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES:**

**MATERIAL CHANGE IN USE:**

arising from a material change in use of the **Insured Property(s)**.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

72322 (7/00)
CI1097



INSURED'S COPY

**ENDORSEMENT NO.** 6

**'his endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DEFINITION OF CLEAN-UP COSTS TO EXCLUDE THIRD-PARTIES ENDORSEMENT**

It is hereby agreed that solely with respect to Section **I. INSURING AGREEMENTS, 1. COVERAGES: COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS,** the definition of **Clean-Up Costs** under Section **VIII. DEFINITIONS**, Paragraph D., **Clean-Up Costs**, is deleted in its entirety and replaced with the following:

D. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, for the investigation, removal, remediation including associated monitoring, or disposal of soil, surfacewater, groundwater or other contamination:

1. To the extent required by **Environmental Laws**; or

2. That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof.

**Clean-Up Costs** also include **Restoration Costs**.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

76099 (7/00)
CI1086



INSURED'S COPY

**ENDORSEMENT NO.** 7

**'his endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE I - FIRST-PARTY CARRIER EXCLUSION**

It is hereby agreed that Section **VIII. DEFINITIONS**, Paragraph **BB.**, **Transported Cargo,** is deleted in its entirety and replaced with the following:

**BB. Transported Cargo** means goods, products, or waste transported for delivery by a third-party carrier properly licensed to transport such goods, products, or waste.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

76470 (7/00)
CI1092



INSURED'S COPY

ENDORSEMENT NO. 8

**'s endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SELF-INSURED RETENTION LAYER OF INSURANCE ENDORSEMENT**
**EACH INCIDENT/AGGREGATE/EACH/EVERY INCIDENT (MAINTENANCE)**

It is hereby agreed that the following changes are made to the Policy:

1. The "Deductible-Each Incident" column contained in Item 3 of the Declarations is deleted and replaced with the following which shall apply to each Coverage applicable under this Policy:

| | | |
|---|---|---|
| **SELF-INSURED RETENTION:** | $250,000 | **Each Incident** |
| | $500,000 | **Aggregate** |
| | $25,000 | **Each/Every Incident (Maintenance)** |

2. Section **V. LIMITS OF COVERAGE; DEDUCTIBLE**, is re-titled "Section **V. LIMITS OF COVERAGE; SELF-INSURED RETENTION AND DEDUCTIBLE**".

Section **V. LIMITS OF COVERAGE; DEDUCTIBLE,** Paragraph **F. Deductible,** 1. Coverages A through I is deleted in its entirety and replaced with the following:

**F. Self-Insured Retention - Coverages A through I; Deductible - Coverage J**

1. Self Insured Retention - Coverages A through I

Subject to Paragraphs **V.A.** through **V.E.** above, this Policy is to pay covered **Loss,** in excess of the Self-Insured Retention amount stated in Item 3 of the Declarations for the applicable coverage, up to but not exceeding the applicable "Each Incident" limit of coverage. Once the **Insured** pays Self- Insured Retention amounts which in the aggregate equal or exceed the amount shown above as the "Aggregate," the "Each/Every Incident (Maintenance)" Self-Insured Retention amount shown above shall apply thereafter to each incident. The retention amount is to be borne by the **Insured** and is not to be insured. The insurance provided by this Policy shall be excess over the applicable Self-Insured Retention amount shown in Item 3 of the Declarations, whether such retention is collectible or not collectible by reason of the refusal or inability of the **Insured** to pay the retention amount due to insolvency, bankruptcy or any other reason. In no event shall the Company be responsible to make any payment under this Policy before the **Insured** has paid the Self-Insured Retention, and the risk of uncollectibility (in whole or in part) of such Self-Insured Retention is expressly retained by the **Insured** and is not in any way or under any circumstances insured or assumed by the Company.

**ENDORSEMENT NO.** 8 (Continued)

If the same, related or continuous **Pollution Conditions** result in coverage under more than one coverage under Coverages A through I, only the highest applicable Self-Insured Retention amount stated in Item 3 of the Declarations among all the coverage sections applicable to the **Loss** shall apply.

The **Insured** shall promptly reimburse the Company for advancing any element of **Loss** falling within the Self-Insured Retention.

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

**ENDORSEMENT NO.** 9

**'is endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MORTGAGE/INSURED/ASSIGNMENT ENDORSEMENT**

It is hereby agreed the following entity(s) is (are) included as a **Named Insured(s)** but solely as respects liability arising out of the ownership, operation, maintenance or use of the **Insured Property(s)** designated in Item 5 of the Declarations.

| | |
|---|---|
| Mortgagee/Insured<br>Address | GMAC Commercial Holding Capital Markets<br>1801 California Street, Suite 3700<br>Denver, CO 80202 |

It is also agreed that Section **VI. CONDITIONS,** Paragraph **A. Assignment,** is deleted in its entirety and replaced with the following:

**A. Assignment** -This Policy may be assigned with the prior written consent of the Company, which consent shall not be unreasonably withheld or delayed. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon.

The Company will waive this provision only in the event of foreclosure upon an **Insured Property(s)** by the Mortgagee/ **Insured** listed above, under which circumstance assignment of this Policy to the Mortgagee/ **Insured** will automatically occur on the date of foreclosure. All of the terms and conditions of this Policy will then apply to the Mortgagee/ **Insured**. The Mortgagee/ **Insured** must notify the Company of the foreclosure within fourteen (14) days of the date of foreclosure.

All other terms, conditions, and exclusions shall remain the same.

Paul Farbel

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

76460(7/00)
CI1123



INSURED'S COPY

**ENDORSEMENT NO.** 10

**'is endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**NAMED INSURED ENDORSEMENT**

It is hereby agreed that Section **VIII., DEFINITIONS**, Paragraph **O. Named Insured** is deleted in its entirety and replaced with the following:

**O. Named Insured** means the person or entity named in Item 1. of the Declarations acting on behalf of all other **Insureds**, if any, for the payment or return of any premium, payment of any deductible, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the **Extended Reporting Period** clause.

Furthermore, it is hereby agreed that the following entity(s) are included as **Named Insureds** but solely as respects liability arising out of the ownership, operation, maintenance or use of the **Insured Property(s)** designated in Item 5. of the Declarations. The first **Named Insured**, previously designated in Item 1. of the Declarations shall remain unchanged as such.

**NAMED INSURED(S)**

Bragg-Picerne Partners, LLC
Picerne Construction/FBG, LLC
Picerne Management/FBG, LLC
Picerne Military Housing, LLC

All other terms, conditions, and exclusions shall remain the same.

Paul Fafard

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

**ENDORSEMENT NO.** 11

**'his endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TERRORISM EXCLUSION - ALL TERRORISM (INCLUDING CERTIFIED ACTS OF TERRORISM) EXCLUSION ENDORSEMENT**

Pursuant to the requirements of the Terrorism Risk Insurance Act of 2002, the "Act," the **Insured** has been provided notice that the **Insured** may elect to purchase coverage for loss covered under this Policy arising directly or indirectly as a result of a certified "act of terrorism" as defined by Section 102. Definitions, of the Act and any revisions or amendments thereto and the premium charge for such coverage.

After receiving such notice, the **Insured** has elected not to purchase coverage for such certified "acts of terrorism" and has agreed to the inclusion of a Terrorism Exclusion. Therefore, this Policy is amended to include the following exclusion:

The Company has no obligation to make any payment or to provide or to pay for a defense under this Policy due to or arising directly or indirectly as a result of or in connection with **Terrorism** including but not limited to, any contemporaneous or ensuing loss caused by fire, looting, or theft.

**Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

The defined term **Terrorism** shall specifically include, but is not limited to, the following definition of a certified "Act of Terrorism" defined by Section 102. Definitions, of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments thereto:

(1) Act of Terrorism -
- (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States -
  - (i) to be an act of terrorism;
  - (ii) to be a violent act or an act that is dangerous to -
    - (I) human life;
    - (II) property; or
    - (III) infrastructure;
  - (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
    - (I) an air carrier or vessel described in paragraph (5)(B); for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission ;
    - (II) the premises of a United States mission; and

**ENDORSEMENT NO.** 11 (Continued)

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

(B) Limitation. - No act shall be certified by the Secretary as an act of terrorism if -

(i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or

(ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms, conditions, and exclusions shall remain the same.

Paul Farrell

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)



FOR USE TO EXCLUDE ALL TERRORISM REJECTION OF CERTIFIED ACTS OF TERRORISM.

**ENDORSEMENT NO.** 12

**This endorsement, effective 12:01 AM,** August 1, 2003

**Forms a part of Policy No:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**NAMED INSURED(S) ENDORSEMENT - CREDITORS**

It is hereby agreed that the following entity(s), creditor(s) of the first **Named Insured,** is (are) included as **Named Insured(s)**, in Item 1 of the Declarations. The Company hereby consents to any future transfer of the **Insured Property(s)** or any portion thereof to such **Named Insured(s)**, which transfer shall not affect or release the Company's liability under this Policy. The first **Named Insured**, if any, previously designated in Item 1 of the Declarations shall remain unchanged as such, and such first **Named Insured** shall, prior to a transfer of the **Insured Property(s)** as described above, be solely responsible for the obligations of the **Named Insured** under this Policy.

**NAMED INSURED(S)**

GMAC Commercial Holding Capital Markets
1801 California Street, Suite 3700
Denver, CO, 80202

All other terms, conditions, and exclusions shall remain the same.

**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

73479 (7/00)
CI1098



INSURED'S COPY

**ENDORSEMENT NO.** 13

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MICROBIAL MATTER ENDORSEMENT**

It is hereby agreed that:

1. Solely with respect to **COVERAGE C - THIRD-PARTY CLAIMS FOR ON-SITE BODILY INJURY AND PROPERTY DAMAGE** and **COVERAGE F - THIRD-PARTY CLAIMS FOR OFF-SITE BODILY INJURY AND PROPERTY DAMAGE**, Section **VIII. DEFINITIONS**, Paragraph **U. Pollution Conditions**, is deleted in its entirety and replaced with the following:

**U.** **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered. **Pollution Conditions** shall include **Microbial Matter** in any structure on land and the atmosphere contained within that structure.

2. Solely with respect to **COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS, COVERAGE B - ON-SITE CLEAN-UP OF NEW CONDITIONS, COVERAGE D - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM PRE-EXISTING CONDITIONS** and **COVERAGE E - THIRD-PARTY CLAIMS FOR OFF-SITE CLEAN-UP RESULTING FROM NEW CONDITIONS**, Section **VIII. DEFINITIONS**, Paragraph **U.** is deleted in its entirety and replaced with the following:

   **U. Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered. **Pollution Conditions** shall not include **Microbial Matter.**

3. The following is paragraph is added to Section **VIII. DEFINITIONS:**

   **Microbial Matter** means fungi or bacterial matter which reproduces through the release of spores or the splitting of cells or other means, including but not limited to, mold, mildew and viruses, whether or not such **Microbial Matter** is living.

4. The following is added as Paragraph **G. Microbial Matter Sublimit**, to Section **V. LIMITS OF COVERAGE, DEDUCTIBLE:**

**ENDORSEMENT NO.** 13 (Continued)

G. **Microbial Matter Sublimit**

Subject to Paragraph V.A. through V.F above, the most the Company will pay for **Loss** associated or in connection with **Microbial Matter** is $1,000,000 regardless of the number of **Pollution Conditions**, **Claims** or claimants.

5. The following paragraphs are added to Section **II. EXCLUSIONS:**

**Failure to Maintain and Construction Defects**

1) arising out of the **Insured's** material failure to properly maintain or inspect the **Insured Property(s)** or any system contained therein which results in the growth of **Microbial Matter**. A material failure to properly maintain or inspect means the **Insured's** failure to adhere to their inspection or maintenance protocols, titled Picerne Property Management and Construction Mold Remediation and Prevention Plan (undated) on file with the Company specific to the assessment and remediation of **Microbial Matter** and water damage at or in any structure upon the **Insured Property** or any system contained therein which results in the growth of **Microbial Matter**.

2) arising out of the improper design and construction of any structure erected upon the **Insured Property** or any system contained therein which leads to the growth of **Microbial Matter**.

**ABANDONED, SOLD or DISCARDED PROPERTY**

arising from **Microbial Matter** in any structure on an **Insured Property** or the atmosphere contained within that structure which commences subsequent to the date that the **Insured Property** is abandoned, sold, given away or otherwise discarded by the **Insured**.

6. Solely with respect to any coverage provided by this policy for **Loss** arising out of or in connection with **Microbial Matter**, Section **VI. CONDITIONS**, Paragraph **H. Other Insurance** is deleted in its entirety and replaced with the following:

**H. Other Insurance** - This insurance is excess of any other valid and collectible insurance. Where other insurance may be available for the **Loss** covered under this endorsement, the **Insured** shall promptly, upon request of the Company, provide the Company with copies of all such policies.

7. Solely with respect to **Loss** arising from **Microbial Matter Item 2. POLICY PERIOD,** of the Declarations is deleted in its entirety and replaced with the following :

**Item 2. POLICY PERIOD:** **FROM** August 1, 2003 **TO** August 1, 2008
12:01 AM STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE

This Policy does not apply to **Claims** or **Loss** associated or in connection with **Microbial Matter** after August 1, 2008.

All other terms, conditions and exclusions remain the same.

[signature]

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 14

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ASBESTOS AND LEAD EXCLUSION**

It is hereby agreed that Section **II. EXCLUSIONS, 1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES**, Paragraph **G. ASBESTOS AND LEAD** is deleted in its entirety and replaced with the following:

> **G.** Solely with respect to Coverages A, B, D, E, G, H and J, arising from asbestos or any asbestos-containing materials or lead-based paint installed or applied in, on or to any building or other structure. This exclusion shall apply to asbestos or lead in soil which emanated from asbestos-containing material or lead-based paint installed or applied in, on or to any building or other structure. This exclusion does not apply to **Clean-Up Costs** for the remediation of soil and groundwater unrelated to asbestos-containing material or lead-based paint applied in, on, or to any building or other structure.

All other terms, conditions and exclusions remain the same.

Paul Fafard

**Authorized Representative**
**or countersignature (where required by law)**

## ENDORSEMENT NO. 15

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AUTOMATIC EXTENDED REPORTING PERIOD - 90 DAYS ENDORSEMENT**

It is hereby agreed that Section **VII. EXTENDED REPORTING PERIOD FOR CLAIMS - COVERAGES A THROUGH I**, paragraph **A. Automatic Extended Reporting Period** is deleted in its entirety and replaced with the following:

**A. Automatic Extended Reporting Period**

Provided that the **Named Insured** has not purchased any other insurance to replace this insurance and which applies to a **Claim** otherwise covered hereunder, the **Named Insured** shall have the right to the following: a period of ninety (90) days following the effective date of such termination of coverage in which to provide written notice to the Company of **Claims** first made and reported within the Automatic **Extended Reporting Period**.

A **Claim** first made and reported within the Automatic Extended Reporting Period will be deemed to have been made on the last day of the **Policy Period**, provided that the claim arises from **Pollution Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by the Policy. No part of the Automatic **Extended Reporting Period** shall apply if the **Optional Extended Reporting Period** is purchased.

All other terms, conditions and exclusions remain the same.

Paul Fetbel

**Authorized Representative**
**or countersignature (where required by law)**

INSURED'S COPY

**ENDORSEMENT NO. 16**

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**KNOWN CONTAMINANT EXCLUSION ENDORSEMENT**

It is hereby agreed that this insurance does not apply to **Clean-Up Costs, Claims, Loss, Actual Loss, Extra Expense** or loss of **Rental Value** due to pollution conditions in soil, groundwater, surfacewater, or air identified in the following report:

§ "Phase I Environmental Site Assessment, Residential Initiative at Fort Bragg" Volumes I through IV, prepared by S&ME, Inc. for GMAC Commercial Holding Capital Corp, dated June 27, 2003.

74541 (7/00)

All other terms, conditions and exclusions remain the same.

[signature]

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO.** 17

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**IDENTIFIED UNDERGROUND STORAGE TANK EXCLUSION ENDORSEMENT**

It is hereby agreed that:

1. Section **II. EXCLUSIONS, 1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES,** Paragraph **J. IDENTIFIED UNDERGROUND STORAGE TANK** is deleted in its entirety and replaced with the following:

**J. IDENTIFIED UNDERGROUND STORAGE TANK:**

Arising from **Pollution Conditions** resulting from an **Underground Storage Tank(s)**:

1. which is or was located on the **Insured Property** and known by a **Responsible Insured**, prior to the **Inception Date**, or
2. which is installed on the **Insured Property** on or after the **Inception Date**

unless such Underground Storage Tank(s) are scheduled on the Policy by endorsement.

2. Section **VIII. DEFINITIONS**, Paragraph **CC. Underground Storage Tank** is deleted in its entirety and replaced with the following:

**CC.** **Underground Storage Tank** means any tank that has or had at least ten (10) percent of its volume below ground including associated underground piping connected to the tank.

All other terms, conditions and exclusions remain the same.

Paul [signature]

**Authorized Representative**
**or countersignature (where required by law)**

ENDORSEMENT NO. 18

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PESTICIDE EXCLUSION ENDORSEMENT**

Solely with respect to **COVERAGE A - ON-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS** and **COVERAGE D - OFF-SITE CLEAN-UP OF PRE-EXISTING CONDITIONS** , it is hereby agreed that this insurance does not apply to **Clean-Up Costs, Claims** or **Loss** arising from or associated with **Pollution Conditions** due to pesticide materials, including but not limited to chlordane, or their degradation by-products or additives on, under or migrating from an **Insured Property.**

All other terms, conditions and exclusions remain the same.

Paul Fatbul

**Authorized Representative**
**or countersignature (where required by law)**

**ENDORSEMENT NO. 19**

**This endorsement, effective 12:01 AM:** August 1, 2003

**Forms a part of policy no.:** PLS 1157811

**Issued to:** BRAGG COMMUNITIES, LLC

**By:** AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**OTHER INSURANCE ENDORSEMENT**

It is hereby agreed that Section **VI. CONDITIONS**, Paragraph **H. OTHER INSURANCE** is deleted in its entirety and replaced with the following::

**H.** **Other Insurance** - Where other insurance may be available for **Loss, Actual Loss** or loss of **Rental Value,** and **Extra Expense** covered under this Policy, the **Insured** shall promptly upon request of the Company provide the Company with copies of all such policies. If other valid and collectible insurance is available to the **Insured** for **Loss, Actual Loss** or loss of **Rental Value**, and **Extra Expense** covered by this Policy, the Company's obligations are limited as follows:

1. This insurance is primary, except as described in paragraph 3. below, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the Company will share with all such other insurance by the method described in Paragraph 2. below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

3. Where other insurance written on behalf of general contractors, subcontractors or third-party waste transporters performing work on behalf of the Named Insured is available this insurance shall apply as excess over other valid and collectible insurance, be it primary or excess.

4. Where this insurance is excess insurance, the Company will pay only its share of the amount of **Loss, Actual Loss** or loss of **Rental Value** and **Extra Expense**, if any, that exceeds the total amount covered by the other valid and collectible insurance.

All other terms, conditions and exclusions remain the same.

Paul Furbush

**Authorized Representative**
**or countersignature (where required by law)**