```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
PICERNE-MILITARY HOUSING, LLC,      )
BRAGG-PICERNE PARTNERS, LLC,        )
AND PICERNE CONSTRUCTION/FBG, LLC,  )
                                    )
            Plaintiffs,             )
                                    )
       v.                           )   C.A. No. 08-273 S
                                    )
AMERICAN INTERNATIONAL              )
SPECIALTY LINES INSURANCE COMPANY   )
                                    )
            Defendant.              )
_____ )
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

In this matter, Picerne-Military Housing, LLC, Bragg-Picerne Partners, LLC, and Picerne Construction/FBG, LLC (collectively, "Picerne") seeks a declaratory judgment that American International Specialty Lines Insurance Company (AISLIC) must indemnify Picerne and pay ongoing investigation and remediation costs under its Pollution Legal Liability Policy related to the removal of buried construction and demolition debris, along with damages for breach of contract and bad faith. The Court previously rejected Picerne's partial motion for summary judgment, finding that the existence of disputed facts precluded summary judgment, particularly while discovery was ongoing. See generally Picerne-Military Hous., LLC v. Am. Int'l

Specialty Lines Ins. Co., 650 F. Supp. 2d 135 (D.R.I. 2009). Discovery is now closed. In this second round of briefing AISLIC seeks summary judgment as to all claims and Picerne has filed a cross-motion for summary judgment as to its breach of contract (Count I) and indemnification (Count II) claims.

I. Background

The Court's September 1, 2009 decision on Picerne's motion for partial summary judgment sets forth the relevant facts and issues as follows:

> Picerne is involved in the development, construction and property management of the Fort Bragg Privatized Family Housing Project in North Carolina (the "Site"). From September 2004 through December 2007, it contracted with PBG of North Carolina, Inc. (PBG) to have demolition work, land clearing, utility infrastructure installation and land grading services completed at the Site. On June 12, 2007, the North Carolina Department of Environmental and Natural Resources (DENR) issued a Notice of Violation (Notice), which alleged Picerne operated a non-conforming solid waste disposal site/open dump at the Site in violation of state code. According to the Notice, DENR's inspection revealed buried construction and demolition (C & D) debris consisting of painted wood, concrete, metal piping and white goods. Picerne and AISLIC agree that to date, what has been uncovered from beneath the Site includes large pieces of concrete, broken wood, rebar, metal, vegetation (tree trunks, tree limbs and mulch from chipped trees), and a limited amount of "white goods" (crushed refrigerator, compressors and a crushed underground storage tank).
>
> The parties part ways on the factual question of "who done it." Picerne submits that without its "knowledge or permission, [subcontractor] PBG dug large pits at Fort Bragg and . . . dumped waste materials from its demolition and land clearing

activities into the pits, and then buried the waste material with dirt/soil." AISLIC sings a different tune and has produced evidence suggesting the C & D debris may have been discarded with Picerne's knowledge and consent.

Picerne is insured under Pollution Legal Liability policy number 1157811 for the period August 1, 2003 through August 1, 2013 ("Policy"). Part B.1 provides AISLIC agrees to:

1. [p]ay on behalf of the **Insured**, **Clean-Up Costs** resulting from **Pollution Conditions** on or under the **Insured Property** that commenced on or after the **Continuity Date**, if such **Pollution Conditions** are discovered by the **Insured** during the **Policy Period**, provided:

    (a) The discovery of such **Pollution Conditions** is reported to the Company in writing as soon as possible after discovery by the **Insured** and in any event during the **Policy Period** in accordance with Section III of the Policy.

Discovery of **Pollution Conditions** happens when a **Responsible Insured** becomes aware of Pollution Conditions.

    (b) Where required, such **Pollution Conditions** have been reported to the appropriate governmental agency in substantial compliance with applicable **Environmental Laws** in effect as of the date of discovery.

The Policy's DEFINITIONS section provides in relevant part:

D. **Clean-Up Costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent which consent shall not be unreasonably withheld or delayed, for the investigation, removal, remediation including associated monitoring, or disposal of soil, surfacewater, groundwater or other contamination:

3

> 1. To the extent required by **Environmental Laws**;
>
> F. Environmental **Laws** means any federal, state, provincial or local laws (including, but not limited to, statues, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.
>
> U. **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.
>
> Y. Responsible **Insured** means the manager or supervisor of the **Named Insured** responsible for environmental affairs, control or compliance, or any manager of the **Insured Property**, or any officer, director or partner of the **Named Insured**.
>
> Finally, the Policy contains the following exclusion:
>
> D. INTENTIONAL **NONCOMPLIANCE:**
>
> This Policy does not apply to Clean-Up Costs . . . [a]rising from **Pollution Conditions** based upon or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

Picerne-Military Hous., 650 F. Supp. 2d at 136-38 (citations omitted) (all emphases in original).

In its ruling on Picerne's motion for partial summary judgment, the Court denied summary judgment based primarily on two disputed issues of material fact: (1) whether C & D debris constitutes a Pollution Condition, as required for coverage under the Policy, and (2) whether any Responsible Insureds at Picerne knew about the C & D debris and failed to timely report it to AISLIC, as required under the Policy's notice provision. See id. at 139-42. The Court permitted the parties to finish discovery on these issues, particularly with respect to Picerne's late-raised allegation that the C & D debris caused sinkholes and methane gas emissions on the Site.

Additional discovery has yielded new evidence suggesting that C & D debris on the Site may have caused subsidence, sinkholes and methane gas emissions. Thus, at the close of the January 10, 2011 hearing on the present motions, the Court intimated that the case still seemed ripe for a trial and referred the parties to a Magistrate Judge for a settlement conference. The settlement negotiations apparently proved unfruitful, and so the Court must turn to the matter before it. Once again, the Court will deny the parties' cross-motions for summary judgment. If anything, the additional discovery has further confirmed the Court's earlier finding that the existence of genuine issues of a material fact in this case precludes an entry of summary judgment.

II. Standard of Review and Rules of Interpretation

Summary judgment is proper if "there is no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009) (internal quotations and citation omitted). The Court must view the facts "in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." Estrada v. Rhode Island, 594 F.3d 56, 59 n.2 (1st Cir. 2010); see also St. Paul Fire & Marine Ins. Co. v. VDE Corp., 603 F.3d 119, 122 (1st Cir. 2010) (stating the standard for reviewing a grant of summary judgment).

Under Rhode Island law, the scope of coverage under an insurance policy depends on the plain language of the policy. See Wagenmaker v. Amica Mut. Ins. Co., 601 F. Supp. 2d 411, 416 (D.R.I. 2009) (citing Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1362 (R.I. 1994)). "All provisions of a policy are read together and construed according to their plain meaning, while at the same time giving effect to all provisions." Id. (citing Aetna Cas. & Sur. Co. v. Sullivan, 633 A.2d 684, 686 (R.I. 1993)). However, "prior to construing the terms of a policy, the Court must first determine whether an

6

ambiguity exists." Allstate Ins. Co. v. Bonn, 709 F. Supp. 2d 161, 165 (D.R.I. 2010) (citing Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 551–52 (R.I. 1990)). "If a policy is ambiguous, that is susceptible to more than one reasonable interpretation, the general rule is that the policy must be strictly construed in favor of the insured and against the insurer." Wagenmaker, 601 F. Supp. 2d at 416 (citing Emp'rs Mut. Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999)).

III. Discussion

This dispute centers around three main issues: (1) whether AISLIC must cover Clean-Up Costs for C & D debris resulting from a Pollution Condition existing on the Site; (2) whether the Notice ordering Picerne to remove and dispose of the C & D debris was promulgated as an Environmental Law, as required under the Policy; and (3) whether any Responsible Insureds at Picerne were aware of the Pollution Conditions on the Site and did not promptly disclose them to AISLIC in contravention of the Policy's notice provisions.

    A. Whether the C & D Debris Constitutes a Pollution Condition

The Court stated in its prior decision that whether C & D debris qualifies as a Pollution Condition is a "fact intensive" question, adding:

> [I]t is noteworthy that both Picerne and AISLIC take an "all or nothing" approach to the C & D debris:

7

> either all of it qualifies or none does. But it is
> possible, indeed plausible, that Picerne could prove
> some materials are a Pollution Condition (i.e., an
> object giving off methane gas) but not others (i.e.,
> tree limbs or mulch or rocks). Admittedly, this could
> lead to an issue regarding how to divide Clean-Up
> Costs as among different buried materials, but at this
> stage (when fact discovery remains open for another
> few months and, apparently, investigation and clean-up
> continues) the bottom line is that grouping all the
> debris together as a matter of law strikes this writer
> as premature.

Picerne-Military Hous., 650 F. Supp. 2d at 142.

In this new round of briefing, the parties again take an all or nothing approach to the relevant question of whether these conditions are "irritants or contaminants" such that they constitute Pollution Conditions under the Policy, and if so, whether the existence of Pollution Conditions caused Picerne to incur Clean-Up Costs. This fact, along with the new allegations raised in the parties' briefing, including various conflicting pronouncements by their respective experts, raise even more factual questions concerning the nature of the C & D debris (e.g., on what areas of the Site, if any, it caused sinkholes, subsidence, and methane gas emissions; whether it qualifies as a contaminant; whether it is hazardous to the environment or individuals; etc.). So the question of whether the C & D debris constitutes a Pollution Condition remains one for a factfinder, along with the additional questions of when and where, if at all, Pollution Conditions exist(ed) on the Site.

8

B. Whether the Notice is an Environmental Law

Coverage under the Policy is limited to Clean-Up Costs for Pollution Conditions "to the extent required by Environmental Laws." (Policy, VIII. Definitions, ¶ D.1.) Environmental Laws are broadly defined under the Policy as:

> [A]ny federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to Pollution Conditions.

(Id., ¶ F.)

AISLIC argues that the Notice of Violation issued by the North Carolina DENR (requiring Picerne to clean up the C & D debris) is not an Environmental Law, as required under the Policy. In essence, AISLIC contends that the Notice was simply a directive to Picerne to remove solid waste from the site and has nothing to do with hazardous pollutants; therefore, it posits, the Notice is not an Environmental Law concerning a Pollution Condition. The Court cannot agree. Given the broad definition of Environmental Laws set forth in ¶ F, it is clear that the Notice, issued by the North Carolina Department of the <u>Environment</u> and Natural Resources, was promulgated as an Environmental Law. Moreover, even if hazardousness is relevant to the analysis, as AISLIC suggests, North Carolina's own statutory authority suggests that solid waste, such as C & D

9

debris, may be hazardous. See N.C. Gen. Stat. § 130A-290(a)(8)(b) (defining "solid waste" as potentially "hazardous waste"). Also on point is T.V. Spano Bldg. Corp. v. Dep't of Natural Res. & Envtl. Control, in which Delaware's equivalent to North Carolina's DENR ordered a housing developer to dispose of buried methane-causing debris similar to the C & D debris presently at issue. 628 A.2d 53 (Del. 1993). The developer resisted the order on the grounds that Delaware statutes required corrective action only where such buried debris is hazardous. Id. at 56. The Delaware Supreme Court disagreed, holding that because the solid debris generated methane and posed a present and/or potential hazard to human health or the environment, it was hazardous waste. Id. at 59-60. In view of these authorities and the plain language of the Policy, the Court concludes that the Notice is an Environmental Law, as described by the Policy.

C. Reporting of the Discovery

AISLIC also reiterates its argument that because certain Picerne personnel failed to provide proper notice of any alleged Pollution Conditions existing on the Site, any claim for Clean-Up Costs is barred by the Policy's intentional non-compliance exclusion. The Court has already ruled that this is a triable question of fact and the parties' additional briefing has not persuaded it otherwise. See Picerne-Military Hous., 650 F.

10

Supp. 2d at 139 ("Whether the referenced personnel (or others) qualify as Responsible Insureds and whether they knew of or directed C & D debris dumping (and when) are disputed factual questions, which must be resolved at trial.").

D. Damages

Finally, Picerne seeks coverage for its 2008 arbitration with PBG over amounts owed for work performed at the Site. AISLIC responds that Picerne failed to tender timely written notice of the PBG arbitration claim, as required by the Policy. However, the facts reveal that Picerne's counsel tendered PBG's arbitration demand and other relevant documentation in a 2009 document production. (Philbrick Supp. Aff. Ex. 10, ECF No. 181-1.) Picerene may properly seek coverage for this claim. To the extent any additional damages questions exist, the Court will reserve ruling on them until trial.

IV. Conclusion

For the above reasons, the parties' cross-motions for summary judgment are DENIED,[1] except with respect to Picerne's request to seek coverage from AISLIC for its arbitration with

---

[1] In denying the parties' cross-motions for summary judgment, the Court accordingly DENIES as moot Plaintiffs' Motion To Strike Certain Exhibits from Defendant's Motion for Summary Judgment. (ECF No. 128). Moreover, the Court will reserve its ruling on the motions to strike various expert reports for trial; the parties may address the timing of such rulings at the final pre-trial conference.

PBG as set forth above.  The matter will be set down for the September trial calendar call.

It is so ordered.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  July 20, 2011